# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **BONNIE WILLIAMS MOORE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:15-cv-00683-MHH |
| } | |
| **COMPUTER SCIENCES** } | |
| **CORPORATIONS,** } | |
| } | |
| **Defendant.** } | |

## INSTRUCTIONS REGARDING THE APPLICABLE LAW:

Ladies and gentleman of the jury:

You have seen and heard the admissible evidence in this case. Now, I will instruct you on the law. You must follow the law as I explain it even if you do not agree with the law, and you must follow all of my instructions as a whole. You may not single out or disregard any of the instructions on the law.

I will not repeat the preliminary instructions that I gave you on Tuesday because you will have copies of those instructions with you as you deliberate. Please review the preliminary instructions. Please recall that the preliminary instructions describe the difference between direct and circumstantial evidence. As I stated on Tuesday, there is no legal difference in the weight you may give to either direct or circumstantial evidence.

1

You have heard testimony from witnesses in court. As noted in the preliminary instructions, it is your duty to weigh the testimony that you have heard. In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

For each witness, you also should ask yourself whether there was evidence that the witness testified falsely about an important fact, and ask whether there was evidence that at some other time that witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial. Please keep in mind that a simple mistake does not mean that a witness was not telling the truth as he or she remembers it. Over time, people naturally tend to forget some things or remember them inaccurately. If a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional misstatement or mischaracterization. The significance of

your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions. You may make inferences from the evidence, but there must be a reasonable connection between the fact proved and the ultimate fact inferred. You may not stack inference upon inference.

During the preliminary instructions, I explained that anything that the lawyers have said—their opening statements, their questions, their objections, the closing arguments that they are about to make—these things are not evidence, and counsel's statements are not binding on you. By the same token, you should not assume from anything I have said that I have an opinion about any factual issue in this case. Your own recollection and interpretation of the evidence is what matters. As I stated at the beginning of the case, I am responsible for instructing you on the law that applies to the issues in this case. You are responsible for deciding the factual issues on the basis of the law that I am about to give you.

Please recall that Ms. Moore must prove each part of her claim by a "preponderance of the evidence," and CSC must prove each part of an affirmative defense by a "preponderance of the evidence." Again, "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or an affirmative defense is more likely true than not true. In deciding

whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of which party may have called them, and all of the exhibits received in evidence, regardless of which party may have introduced them.

You must not be influenced in any way by either sympathy for or prejudice against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Now I will tell you what Ms. Moore must prove for you to return a verdict in her favor.  In this case, Ms. Moore raises three claims against CSC.  I will tell you about each of those claims.

**DISPARATE TREATMENT CLAIM**

First, Ms. Moore claims that CSC discriminated against her by terminating her employment because she had a "disability" within the meaning of the Americans with Disabilities Act (the ADA).

CSC denies Ms. Moore's claim and asserts that Ms. Moore was laid off, and her layoff was not related to any disability.

Under the ADA, if a person is qualified to do a job, it is unlawful for an employer to discharge the person because of that person's disability.

To succeed on her claim, Ms. Moore must prove all the following facts by a preponderance of the evidence:

<u>First</u>:   She had a disability;

<u>Second</u>: She was a qualified individual;

<u>Third</u>:   CSC discharged her; and

<u>Fourth</u>: CSC took that action because of Ms. Moore's disability.

With respect to the first three elements, the parties stipulate that Ms. Moore had a disability for purposes of the ADA, that she was a qualified individual, and that CSC discharged her. Therefore, you must decide only the fourth element, that is, whether CSC discharged Ms. Moore because of her disability.

To show that she was discharged because of her disability, Ms. Moore does not need to show that her disability was the sole basis for her termination, but she must show that it was a determinative factor. In other words, she must show that her disability made a difference in the outcome. Ms. Moore must show that but for her disability, CSC would not have terminated her employment.

5

CSC denies that it terminated Ms. Moore because of her disability. CSC contends that it terminated Ms. Moore for legitimate business reasons in connection with a reduction in force. Under the law, while an employer may not terminate an employee because of the employee's disability, the employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe CSC's reasons for its termination decision and find that its decision was not because of Ms. Moore's disability, then you must not second guess that decision, and you must not substitute your own judgment for CSC's judgment.

I have explained to you that evidence may be direct or circumstantial. To decide whether CSC's decision to terminate Ms. Moore was because of her disability, you may consider the circumstances of CSC's decision. For example, you may consider whether you believe the reasons CSC gave for the decision. If you do not believe the reasons CSC gave for the decision, then you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reason for the decision.

If you find that Ms. Moore has proved that CSC terminated her because of her disability, then you must decide the issue of her compensatory damages.

When considering the issue of compensatory damages, you should determine what amount, if any, Ms. Moore has proven by a preponderance of the evidence as full, just, and reasonable compensation for all of her damages as a

result of her termination, no more and no less.  Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize CSC. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Ms. Moore has proved them by a preponderance of the evidence, and no others:

> (a) net lost wages and benefits from the date of Ms. Moore's termination to the date of your verdict; and
>
> (b) emotional pain and mental anguish.

To determine the amount of Ms. Moore's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Ms. Moore should recover for emotional pain and mental anguish, you may consider both the mental and emotional aspects of injury, tangible and intangible.  Ms. Moore does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate her for those injuries. There is no exact standard to apply, but the award should be fair in light of the evidence.

CSC has raised the affirmative defense that Ms. Moore failed to mitigate her damages. The law requires that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to mitigate those damages. For purposes of Ms. Moore's claim for lost pay, the duty to mitigate damages requires Ms. Moore to be reasonably diligent in seeking a job that is substantially equivalent to the position she held with CSC. CSC bears the burden of proving that Ms. Moore failed to mitigate damages. To carry its burden, CSC must prove by a preponderance of the evidence that: (1) work comparable to the position Ms. Moore held with CSC was available, and (2) Ms. Moore did not make reasonably diligent efforts to obtain that work.

If you find that CSC proved by a preponderance of the evidence that Ms. Moore failed to mitigate damages, then you should reduce the amount of Ms. Moore's damages by the amount that she could have earned if she had taken advantage of an opportunity for substantially equivalent employment.

In addition to compensatory damages, Ms. Moore asks you to award punitive damages. Punitive damages are not designed to compensate Ms. Moore but, instead, to punish CSC for wrongful conduct and to deter future wrongful conduct. You may reach the issue of punitive damages only if you find for Ms. Moore and award her compensatory damages.

To be entitled to an award of punitive damages, Ms. Moore must prove by a preponderance of the evidence that CSC acted with either malice or with reckless indifference toward her federally protected rights. Specifically, Ms. Moore must show that an employee of CSC, acting in a managerial capacity, either acted with malice or with reckless indifference to her federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority CSC gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that CSC acted with malice, Ms. Moore must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Ms. Moore anyway. To show that CSC acted with reckless indifference to her federally protected rights, Ms. Moore must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Ms. Moore to an award of punitive damages; Ms. Moore does not have to prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with

9

the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether CSC acted with malice or with reckless indifference to Ms. Moore's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: (1) whether CSC engaged in a pattern of discrimination toward its employees; (2) whether CSC acted spitefully or malevolently; (3) whether CSC showed a blatant disregard for civil legal obligations; (4) whether CSC failed to investigate reports of discrimination; (5) whether CSC failed to take corrective action concerning discriminatory acts or comments by its employees; and (6) whether the person accused of discrimination was included in the employer's decision making process concerning Ms. Moore's discharge.

If you find that punitive damages should be assessed against CSC, you may consider evidence regarding CSC's financial resources in fixing the amount of such damages.

The fact that I have given you instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe that Ms. Moore

should, or should not, prevail on her claim. As I said when the trial started, your decision must be based only on the evidence presented during trial.

**REASONABLE ACCOMMODATION CLAIM**

Ms. Moore also claims that CSC discriminated against her because of her disability by failing to provide a reasonable accommodation for her disability within the meaning of the Americans with Disabilities Act (the ADA). CSC denies Ms. Moore's claim and asserts that it did not deny her a reasonable accommodation.

Under the ADA, if an employer knows that an employee has a disability and needs a reasonable accommodation to perform the essential functions of her job, then the employer must provide a reasonable accommodation.

To succeed on her claim, Ms. Moore must prove each of the following facts by a preponderance of the evidence:

First: She had a disability;

Second: She was a qualified individual;

Third: CSC knew of her disability;

Fourth: She requested an accommodation;

Fifth: A reasonable accommodation existed that would have allowed her to perform the essential functions of the job; and

Sixth: CSC failed to provide a reasonable accommodation.

The parties stipulate that Ms. Moore has met the first three elements of her burden of proof.

For the fourth element, Ms. Moore must prove by a preponderance of the evidence that she requested an accommodation. Ms. Moore need not use magic words to request an accommodation, but she must have provided CSC with enough information that, under the circumstances, CSC can be fairly said to know of both Ms. Moore's disability and her desire for an accommodation.

For the fifth element, Ms. Moore must prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed her to perform the essential functions of the job. A "reasonable accommodation" is a modification or adjustment of the employer's ordinary work rules, facilities, or terms and conditions of employment that the employer can make without causing an undue hardship. In this case, Ms. Moore contends that she would have been able to perform the essential functions of Senior Billing Professional if CSC had allowed her to take leave for cancer treatment in 2014. A leave of absence would be a reasonable accommodation if it would allow Ms. Moore to perform the essential functions of her job in the present or in the immediate future, but an indefinite leave of absence is not a reasonable accommodation.

For the sixth element, Ms. Moore must prove by a preponderance of the evidence that CSC failed to provide a reasonable accommodation. If you find that

Plaintiff withdrew from the process of requesting a reasonable accommodation, you should find for CSC.

If you find that Ms. Moore has proved each element of her claim, then you must decide whether CSC has established its affirmative defense that it acted in good faith.

CSC contends that after Ms. Moore informed CSC of her disability and requested leave paperwork, CSC made good faith efforts to consult with her to identify and make a reasonable accommodation that would not cause an undue hardship on the operation of CSC's business.

CSC must prove by a preponderance of the evidence that it made good faith efforts to identify and make a reasonable accommodation for Ms. Moore.

If you find by a preponderance of the evidence that CSC made good faith efforts to identify and make a reasonable accommodation for Ms. Moore, then CSC has established its affirmative defense, and you will not decide the issue of Ms. Moore's damages, but if Ms. Moore has established all elements of her claim and if you find that CSC has not established its affirmative defense, then you must decide the damages issue.

The instructions I gave you a few moments ago on compensatory damages apply equally here.

CSC claims that Ms. Moore failed to mitigate her damages. The instructions I gave you a few moments ago on the mitigation of damages are equally applicable here.

Ms. Moore asks you to award punitive damages. The instructions I gave you a few moments ago on punitive damages are equally applicable here.

**FMLA INTERFERENCE CLAIM**

Finally, Ms. Moore claims that she was entitled to a leave of absence from work under a federal law called the Family and Medical Leave Act, also known as the FMLA, and that CSC interfered with, restrained, or denied her entitlement to a leave of absence.

Under the FMLA, an eligible employee may take up to 12 weeks of leave during any 12-month period for the employee's own serious health condition. This leave is called FMLA leave.

The FMLA also gives the employee, after her leave, the right to be return to the position she held when the leave began or to be given an equivalent position. It is unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any of these rights.

To succeed on her FMLA claim against CSC, Ms. Moore must prove each of the following facts by a preponderance of the evidence:

> First:   She was eligible for FMLA leave;
>
> Second: She was entitled to FMLA leave;
>
> Third:   She gave CSC proper notice of her need for leave; and
>
> Fourth: CSC interfered with her right to take FMLA leave by refusing to authorize, preventing, or discouraging her from taking leave.

For the first element, Ms. Moore was eligible for FMLA leave if:

(a) she worked for CSC for at least 12 months before the date any FMLA leave was to begin, and

(b) she worked for CSC for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

For the second element, Ms. Moore was entitled to FMLA leave if she had an FMLA-qualifying reason. A serious health condition that prevented Ms. Moore from performing the functions of her job is an "FMLA-qualifying reason." Cancer is a serious health condition.

For the third element, Ms. Moore "gave proper notice" to CSC of her need for FMLA leave if she notified CSC of the need to take FMLA leave in a timely manner and in a way that alerted CSC that her absence might qualify as FMLA leave, if Ms. Moore did not expressly mention the FMLA.

If Ms. Moore knew of the need for leave more than 30 days before the leave was to begin, then she had to give CSC notice at least 30 days before the leave was to begin. If Ms. Moore knew of the need for leave less than 30 days before the leave was to begin, then she had to give CSC notice as soon as was reasonably possible.

For the fourth element, you must determine whether CSC interfered with Ms. Moore's right to take FMLA leave by refusing to authorize, preventing, or discouraging her from taking FMLA leave during "the push." Ms. Moore does not have to prove motive or intent to establish an FMLA interference claim. If you find by a preponderance of the evidence that CSC interfered with Ms. Moore's right to take FMLA leave, then the Court will fashion an appropriate remedy. You do not have to consider the issue of damages on this claim.

It is now time for counsel to present their closing arguments.

*Moore v. Computer Sciences Corporation*

**DONE** this March 5, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE